UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.

GUARDANT HEALTH, INC.,

    Plaintiff,

v.

HOLLY TAYLOR,

    Defendant.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff Guardant Health, Inc. ("Plaintiff" or "Guardant") sues Defendant Holly Taylor ("Defendant" or "Ms. Taylor") and says:

## INTRODUCTION

1. Guardant brings this action for injunctive relief and damages to enforce contractual promises made and breached by Defendant and to remedy Defendant's misappropriation of trade secrets and other confidential and proprietary business information owned by Guardant.

2. Defendant formerly worked for Guardant as an Account Manager I as part of Guardant's Oncology Sales Department in Stuart, Florida. Defendant signed an Employee Confidential Information and Invention Assignment Agreement (the "Agreement") with Guardant on April 29, 2021. The Agreement contains a non-compete provision and a confidentiality provision. Notwithstanding her contractual promises to the contrary, Defendant has accepted and commenced employment with Epic Sciences, a Guardant competitor, as a Key Account Manager in Stuart, Florida. In this role, Defendant has used and continues to use Guardant's confidential information and trade secrets to solicit and divert Guardant's customers to Epic Sciences, a

competing business. This action seeks to prevent Defendant from further breaching her statutory and common law duties to Guardant.

## PARTIES, JURISDICTION AND VENUE

3. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Guardant's claim pursuant to the Defend Trade Secrets Act, Count I, arises under a law of the United States. The Court has supplemental jurisdiction over the related claims asserted in Counts II – IV of this action pursuant to 28 U.S.C. § 1367(c).

4. The Court also has subject matter jurisdiction over Counts II – IV pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value $75,000.00, exclusive of interest, costs and attorneys' fees, and is between parties of different states.

5. Guardant is a Delaware corporation qualified to do business in the State of Florida, with its principal place of business located at 505 Penobscot Dr., Redwood City, CA 94063.

6. Defendant is an adult citizen and resident of the State of Florida and domiciled at 321 SE Edgewood Drive, Stuart, FL 34996.

7. Venue in the United States District Court for the Southern District of Florida is proper in this action under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this District. In addition, venue is proper here under 28 U.S.C. § 1391(b)(2), in that the events giving rise to the claims in this action occurred in this District.

## GENERAL ALLEGATIONS

### Guardant Health and the interests this action seeks to protect

8. Guardant is a health services company dedicated to helping patients at all stages of cancer live longer and healthier lives through the power of blood tests and the data they unlock— from informing better treatment in patients with advanced cancer, to new ways of monitoring

recurrence in cancer survivors, and screening to find cancer at its earliest and most treatable in the general population.

9. As more fully detailed below, sales personnel, like Defendant, have been provided with Guardant's valuable and confidential business information and trade secrets designed to give Guardant an advantage over its competitors. Such information includes confidential and proprietary information such as customer identities, identities and contact information for employees of customers who make purchasing decisions, customer purchase history, pricing, customer invoices, notes entered by Guardant personnel with important information relating to customers, established client relationships and contacts built at Guardant's expense and with its resources, and notes on how to court customers, as well as notations regarding timing of sales. Additionally, Guardant's sales personnel, like Defendant, are provided with training and knowledge of the oncology testing market, direct connections to Guardant's customers, and established customer relationships that were built and developed through years of hard work and expense by Guardant. Typical sales representatives without Guardant's established relationships would not have access to these direct customer connections and would instead need to build client trust and establish a relationship with each customer contact over time, which could take years.

10. A competitor of Guardant that hires Guardant employees who were privy to the information and trade secrets described above thereby gains an unfair competitive advantage over Guardant in any market in which the competitor and Guardant both operate.

### Defendant's contractual promises

11. On or about April 29, 2021, Defendant and Guardant entered into an Employee Confidential Information and Invention Assignment Agreement (the "Agreement"), a true and correct copy of which is attached as Exhibit 1.

12. The Agreement defines in detail, as "Confidential Information" all information and materials that are confidential, secret, or proprietary (whether or not technical in nature) related to any aspect of the business of the company. Exhibit 1, ¶ 1(a). The Agreement identifies that Confidential Information includes:

> "***lists of names or classes of customers or personnel***, lists of suppliers or manufacturing entities, inventions, innovations, improvements, research or development activities and plans, test results, product specifications, disclosures, processes, systems, methods, formulae, devices, patents, patent applications, trademarks, intellectual properties, instruments, materials, products, patterns, compilations, programs, techniques, sequences, designs, specifications, computer programs, source codes, mask works, costs of production, volume of sales, ***promotional methods, marketing plans, business plans, business opportunities***, ***strategies***, forecasts, prices or other financial data, financial statements, budgets, projections, representative agreements, licenses, sub-licenses, agreements, and any and all information concerning the teaching of sales, marketing, and operational techniques, marketing and purchasing formulae, development of product designs, pre-manufacturing product designs, and formats."

*Id.* (emphasis added).

13. The Agreement specifies how Defendant must treat Confidential Information and imposes on Defendant duties to maintain the secrecy of Guardant's Confidential information and to narrowly limit its use. In particular, Defendant was and remains obligated to hold all Confidential Information in confidence and to not disclose, use, copy, publish, summarize, or remove from the premises of the Company any Confidential Information, except as necessary to carry out her responsibilities as a Guardant employee. Exhibit 1, ¶ 1(b).

14. The Agreement also specifies that upon her termination, Defendant must return to the Company (and will not keep in her possession or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to the Guardant including its Confidential Information. Exhibit 1, ¶ 4.

15. Defendant also promised that for a period of one (1) year after her employment with Guardant, she would not "directly or indirectly engage or assist others in engaging in any business or enterprise (whether as owner, partner, officer, director, employee, consultant, investor, lender or otherwise, except as the holder of not more than 1% of the outstanding stock of a publicly-held company) that is competitive with the Company's business ('Competing Business')." Exhibit 1, ¶ 6(c). The Agreement further defines a Competing Business as "any business or enterprise that develops, manufactures, markets, licenses, sells or provides any product or service that involves a blood based assay for oncology." *Id.*

16. Defendant further promised that upon her termination of employment with Guardant that she would "not use Company trade secrets to either solicit business from, or enter into a business relationship or transaction with, any person or entity that has or has had a business relationship with the Company (including, but not limited to, customers) or disrupt, or attempt to disrupt, any relationship, contractual or otherwise, between Company and any such person or entity." Exhibit 1, ¶ 6(a).

17. The customer data and business information that Defendant obtained and improperly retained is proprietary and confidential to Guardant. Guardant derives actual and potential economic value from the information and from the fact that it is not generally known to or ascertainable by proper means to competitors of Guardant, including Epic Sciences. Guardant protects the confidentiality of this information, including by restricting its access and through use of contractual restrictions like those specified above, limiting disclosure and use of such information, and mandating its return.

18. Defendant, on her own behalf and on behalf of Epic Sciences, has improperly used the confidential and proprietary information and trade secrets she obtained and improperly retained, to solicit and divert oncology testing customers from Guardant to Epic Sciences.

### The conduct by Defendant giving rise to this action

19. Defendant's employment with Guardant ended on April 1, 2022, after her voluntary resignation. However, despite the non-ambiguous language of the Agreement and her acknowledgement of company policy, Defendant has accepted and commenced employment with Guardant's direct competitor, Epic Sciences, less than a year after her employment with Guardant.

20. Defendant's acceptance of employment with Epic Sciences is a material breach of the express and unambiguous terms of the Agreement between her and Guardant.

21. During her employment with Guardant, Defendant acquired access to confidential and proprietary information and trade secrets, regarding Guardant's business and customers in Florida, including lists and identities of existing and prospective customers, quantity of business and specific transactions done with those customers, and it highlighted which customers to target, including whether sales representatives needed to spend more or less time with a customer to establish a sale. (the "Client List'). The Client List was shared with Defendant during her employment with Guardant via Google documents.

22. Additionally, during her time with Guardant, Defendant acquired confidential and proprietary information and trade secrets not contained within Guardant's Client List, such as training and knowledge of the oncology testing market, direct connections to Guardant customers, and established Guardant customer relationships that were built and developed through years of hard work and expense by Guardant. Without Guardant's established client relationships and market knowledge, Defendant would not have these direct customer connections. A typical sales

representative would not be able to directly connect with a decision-maker at a Guardant customer to make a sale. Instead, they would need to work and craft a relationship with the customer which could take several visits and perhaps months or years to establish, before they could even make a sale. Notably, this information was not otherwise available to Defendant, as she had not worked in the field of oncology prior to her employment with Guardant. Further, any information she gained through her employment with Guardant is confidential and constitutes trade secrets. Epic Sciences entered the oncology and liquid biopsy market in early 2022 and thus, did not have these established client contacts prior to employing Defendant.

23. Based upon information and belief, Defendant downloaded and saved an offline copy of the Client List.

24. Based upon information and belief, Defendant failed to return the Client List to Guardant when she was terminated. Defendant kept the Client List in direct violation of the express and unambiguous terms of the Agreement between her and Guardant.

25. In her new role working for Guardant's competitor, Defendant has improperly used confidential information and trade secrets gained through her employment with Guardant, including but not limited to the Client List, Guardant's training and knowledge of the oncology testing market, and Guardant's established customer connections, to solicit and divert Guardant's customers to Epic Sciences, within the South Florida oncology testing market. This conduct is a material breach of the Agreement.

26. As noted above, Epic Sciences entered the oncology and liquid biopsy market in early 2022 and it began to hire Key Account Managers such as Defendant. Epic Sciences directly competes against Guardant and offers liquid biopsy for breast cancer and a commercial clinical experience program where they accept no-cost samples for offices and patients. Defendant

breached the Agreement by working for a Guardant competitor within a year of her separation from Guardant.

27. Defendant's breach of the Agreement and her improper use of Guardant's confidential information and trade secrets have resulted in a direct loss to Guardant's business.

28. Specifically, Defendant's conduct has caused Guardant the following losses thus far:

    (a) Customer A – a loss of $42,000.00;

    (b) Customer B – a loss of $31,500.00;

    (c) Customer C – a loss of $35,000.00;

    (d) Customer D – a loss of $73,500.00;

    (e) Customer F – a loss of $14,000.00;

    (f) Customer E – a loss of $45,000.00;

    (g) Customer G – a loss of $35,000.00;

29. Defendant's improper use of Guardant's confidential information and trade secrets has resulted in a total approximate loss of $276,000.00 thus far.

## COUNT I

## DEFEND TRADE SECRETS ACTS

30. Guardant incorporates the allegations of paragraphs 1 through 29 above as if fully set forth herein.

31. Defendant has, without authorization, used or disclosed or threatened to use or disclose, Guardant's confidential information relating to Guardant, its customers (including but not limited to the information contained in Guardant's Client List, Guardant's training and knowledge of the oncology testing market, and Guardant's established customer connections), its

pricing, and its business and marketing strategies which constitute Trade Secrets, as that term is defined in the Defend Trade Secrets Act 18 U.S.C. § 1839(3), for her own benefit.

32. Defendant's conduct constitutes actual "misappropriation" and threatened future "misappropriation," as that term is defined by 18 U.S.C. § 1839(5).

33. Defendant's conduct was willful and malicious, has caused actual loss to Guardant, and threatens additional and future loss to Guardant if not enjoined by the Court, as a direct and proximate result of Defendant's misappropriation of Guardant's trade secrets, including the diversion and solicitation of oncology testing customers from Guardant to Epic Sciences in the South Florida market.

34. Defendant's conduct has caused Guardant to incur costs, expenses and attorneys' fees in bringing this action, which are ongoing.

## COUNT II

## FLORIDA UNIFORM TRADE SECRETS ACT

35. Guardant incorporates the allegations of paragraphs 1 through 34 above as if fully set forth herein.

36. The confidential information improperly obtained, retained, disclosed and used by Defendant, relating to Guardant, its customers (including but not limited to the information contained in Guardant's Client List, Guardant's training and knowledge of the oncology testing market, and Guardant's established customer connections), its pricing, and its business and marketing strategies constitute trade secrets protected by Florida's Uniform Trade Secrets Act. Guardant has acted at all times to protect from disclosure these trade secrets.

37. As described above, Defendant's conduct constitutes actual "misappropriation" and threatened future "misappropriation," as that term is defined by Florida Statute § 688.002(2).

38.     Defendant's conduct was willful and malicious, has caused actual loss to Guardant, and threatens additional and future loss to Guardant if not enjoined by the Court, as a direct and proximate result of Defendant's misappropriation of Guardant's trade secrets, including the diversion and solicitation of oncology testing customers from Guardant to Epic Sciences in the South Florida market.

39.     Defendant's conduct has caused Guardant to incur costs, expenses and attorneys' fees in bringing this action, which are ongoing.

## COUNT III

## BREACH OF CONTRACT

40.     Guardant incorporates the allegations of paragraphs 1 through 39 above as if fully set forth herein.

41.     Defendant breached paragraphs 1(b), 4, 6(a), and 6(c) of the Agreement by: (i) failing to hold the Confidential Information in confidences and failing to refrain from disclosing the Confidential Information to any other party; (ii) using the Confidential Information for purposes other than her employment with Guardant; (iii) failing to deliver all Confidential Information to Guardant following her separation from employment with Guardant; and (iv) through the use of Confidential Information soliciting and diverting customers from Guardant to Epic Sciences, a competing business.

42.     Defendant's conduct has caused actual loss to Guardant and threatens additional and future loss to Guardant if not enjoined by the Court, as a direct and proximate result of Defendant's misappropriation of Guardant's trade secrets and confidential business information, including the diversion and solicitation of oncology testing customers from Guardant to Epic Sciences in the South Florida market.

43. Guardant has no adequate remedy at law to prohibit Defendant from directly competing with Guardant in the oncology testing industry.

44. Because Guardant cannot be adequately compensated monetarily as a matter of law, the Agreement provides for injunctive relief and other equitable relief, including but not limited to temporary restraining orders, preliminary injunctions, and permanent injunctions. Exhibit 1, ¶ 7(f).

45. By signing the Agreement, Defendant acknowledged and agreed to the remedies provided to Guardant in the event of a breach.

46. Guardant has a legitimate business interest in prohibiting Defendant from directly competing with it in the oncology testing industry.

47. Defendant's conduct has caused Guardant to incur costs, expenses, and attorney's fees in bringing this action, which are ongoing.

## COUNT IV

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

48. Guardant incorporates the allegations of paragraphs 1 through 47 above as if fully set forth herein.

49. Defendant has knowledge of Guardant's advantageous business relationships with its customers.

50. Defendant has knowingly, intentionally and without justification interfered with or attempted to interfere with Guardant's business relationship with its customers.

51. Guardant has no adequate remedy at law and will suffer substantial and irreparable harm unless Defendant is enjoined as requested below.

DB1/ 133735289.1

52. Defendant's conduct was wanton, willful and malicious, so as to justify the imposition of punitive damages. Guardant intends to seek to amend this Complaint before trial to add a claim for punitive damages pursuant to the procedure set forth in Fla. Stat. § 768.72.

53. Defendant's conduct has caused Guardant to incur costs, expenses, and attorney's fees in bringing this action, which are ongoing.

### (V) STATEMENT OF IRREPARABLE HARM AND INJURY

54. Guardant has been and continues to be subjected to irreparable injury for which no remedy at law exists.

55. The unlawful actions by Defendant, her agents and those acting in concert with her, are causing and will continue to cause great and irreparable harm to Guardant's business which cannot adequately be remedied by an award of monetary damages.

56. Without this Court's intervention there is a real, present and continuing threat that Defendant may wrongfully use or disclose Guardant's trade secrets and confidential or proprietary information in competition with Guardant, and to tortiously interfere with contractual and business relations of Guardant.

57. Defendant's use and/or disclosure of Guardant's trade secrets and confidential and proprietary information would cause Guardant irreparable harm for which Guardant has no remedy at law.

58. Unless a preliminary and/or permanent injunction is entered on the terms set forth below, greater injury will be inflicted on Guardant than could possibly result to Defendant by the granting of said relief. Defendant will be harmed by the granting of the prayed-for injunctive relief only to the extent that the order will compel Defendant to abide by her obligations imposed by law.

### (VI) STATEMENT OF PLAINTIFF'S LEGITIMATE PROTECTIBLE BUSINESS INTERESTS AND NECESSITY OF RESTRICTIONS TO PROTECT THESE INTERESTS

59. Guardant has a legitimate and protectible business interest in (i) its trade secrets, (ii) its valuable confidential business information, (iii) its substantial relationships with customers, (iv) customer, and employee and business practice goodwill, and/or (v) Guardant's extraordinary and specialized training for its salespersons and other employees.

### PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

**WHEREFORE**, Plaintiff Guardant prays:

60. That judgment be entered in favor of Plaintiff and against Defendant;

61. That judgment be entered declaring that the actions of the Defendant are in violation of law;

62. That Defendant be preliminarily and permanently enjoined from the actions described herein consistent with the law, including but not limited to:

   a. requiring Defendant to inventory and immediately return, without retaining any copies or summaries, all of Guardant's documents and information taken by Defendant, and precluding Defendant from using or disclosing any of Guardant's confidential or proprietary documents or information or trade secrets;

   b. enjoin and restrain Defendant, her agents, servants, employees, attorneys and all others in active concert or participation with her who receive actual notice thereof by personal services or otherwise, for a period of twelve (12) months from the date of the Court's Order, from directly or indirectly soliciting and diverting Guardant customers for which Defendant accessed or learned of their information during her employment with Guardant (the "Prohibited Customers"), from Guardant to Epic Sciences, or otherwise;

c. precluding Defendant and anyone to whom she has disclosed or conveyed confidential information relating to Guardant or its customers from having any further contact, directly or indirectly, with the Prohibited Customers, for a period of twelve (12) months from the date of the Court's Order;

d. precluding Defendant and anyone else to whom she has disclosed or conveyed confidential information relating to Guardant or its customers from having any communications with, or providing any assistance or information to, directly or indirectly, anyone who has any responsibility for any Prohibited Customers, for a period of twelve (12) months from the date of the Court's Order;

e. Plaintiff further prays that Defendant be duly cited to appear and answer this Complaint, after having been served with a copy of same, and that after due proceedings had, there be judgment herein in favor of Plaintiff and against the Defendant granting a permanent injunction in the form and substance of the preliminary injunction prayed for by Plaintiff, and reserving Plaintiff's damages or other relief for such losses as may have been occasioned by the acts of Defendant.

**PRAYER FOR DAMAGES AND SUCH OTHER RELIEF**

63. Plaintiff Guardant further prays for:

a. all damages sustained by it as a result of the wrongful conduct described above, beginning with the earliest date of violation up until the date of the entry of the final judgment in this action;

b. pre- and post-judgment interest;

c. attorneys' fees and costs; and

d. such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

64.     Plaintiff demands a jury trial as to all issues so triable.

Dated: November 8, 2022                                     Respectfully submitted,


                                                            */s/ Kimberley E. Lunetta*
                                                            Kimberley E. Lunetta
                                                            Florida Bar No. 1026812
                                                            Email: kimberley.lunetta@morganlewis.com
                                                            Morgan, Lewis & Bockius LLP
                                                            600 Brickell Avenue
                                                            Suite 1600
                                                            Miami, FL 33131-3075
                                                            Telephone: 305.415.3000
                                                            eFacsimile: 877.432.3001

                                                            *Attorney for Plaintiff*